JOURNAL ENTRY and OPINION
{¶ 1} Defendant-appellant, Dwayne Vaughters ("Vaughters"), appeals the trial court's denial of his motion to suppress. Finding no merit to the appeal, we affirm.
 {¶ 2} In 2005, Vaughters was charged with carrying a concealed weapon and possession of drugs with a firearm specification. Vaughters filed a motion to suppress and, after a hearing, the court denied his motion. Vaughters pled no contest to both charges, and the court sentenced him to one and one-half years in prison.
 {¶ 3} The following evidence was presented at the hearing on the motion to suppress. On February 26, 2005, Officer Harris of the Cleveland Police Department and his partner, Officer Todd, were patrolling the area of East 116th Street and Union Avenue in their marked police car. Harris testified that the area is well known for drug activity and that he has made numerous arrests in the area. At approximately 3:15 a.m., the officers observed two males who appeared to be under age eighteen. The officers pulled up to the two males, later identified as Vaughters and his cousin, Kevin Ferguson, and asked them their ages. Vaughters replied: "Oh man, I get this all the time. I'm 22 years old." Believing Vaughters to be around sixteen or seventeen years old, Harris exited the cruiser and asked him for identification. Harris asked Vaughters to remove his hands from his pockets. Vaughters was wearing a dark, heavy coat. Harris noticed that Vaughters' coat was hanging to the left, as though it was weighed down by a heavy object. Harris then tapped the outside of Vaughters' jacket and felt the barrel of a gun. He immediately restrained Vaughters and informed his partner of the gun. The officers retrieved a loaded gun from Vaughters' coat pocket. Vaughters was asked if he had any other contraband on his person, and he admitted that he also possessed crack cocaine. Vaughters was arrested and advised of his Miranda rights. Harris next retrieved a pill bottle from Vaughters' pocket, which contained crack cocaine.
 {¶ 4} Vaughters testified that Officer Harris first pulled a water bottle from Vaughter's pocket, smelled the contents of the bottle, and then tapped his coat pocket. Vaughters admitted that the gun and the drugs belonged to him. Vaughters also admitted that the officer's testimony was, for the most part, accurate, except that Vaughters always had facial hair, contradicting Harris's testimony that Vaughters did not have facial hair the night of the arrest.
 {¶ 5} Ferguson also testified on his cousin's behalf. He testified that he saw Harris take the water bottle from Vaughters' pocket and then tap Vaughters' pocket. Ferguson also testified that, although he was unaware that his cousin had crack cocaine on his person, he was not surprised that Vaughters was carrying a gun. Vaughters' mother, Carmella Vaughters, testified that her son has had facial hair since he was age fourteen.
 {¶ 6} Vaughters now appeals, raising one assignment of error, in which he argues that the trial court erred when it denied his motion to suppress because the search and seizure violated the Fourth Amendment.[1]
 {¶ 7} At a hearing on a motion to suppress, the trial court functions as the trier of fact, inasmuch as the trial court is in the best position to weigh the evidence by resolving factual questions and evaluating the credibility of the witnesses. Statev. Mills (1992), 62 Ohio St.3d 357, 582 N.E.2d 972. On review, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. State v.Harris (1994), 98 Ohio App.3d 543, 546, 649 N.E.2d 7. After accepting such factual findings, the reviewing court must independently determine as a matter of law whether the applicable legal standard has been satisfied. State v. Lloyd (1998),126 Ohio App.3d 95, 709 N.E.2d 913.
 {¶ 8} In the seminal case of Terry v. Ohio, the United States Supreme Court explained that the Fourth Amendment allows a police officer to stop and detain an individual if the officer possesses a reasonable suspicion, based upon specific and articulable facts, that criminal activity "may be afoot." Terryv. Ohio (1968), 392 U.S. 1, 9, 20 L. Ed. 2d 889, 88 S. Ct. 1868; see, also, State v. Andrews (1991), 57 Ohio St.3d 86,565 N.E.2d 1271.
 {¶ 9} The Fourth Amendment also allows the officer to frisk the person for weapons if, "the police officer [can] to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Terry, supra, at 21; see also Katz, Ohio Arrest, Search and Seizure (2005 Edition), § 16.1 ("For a frisk to be reasonable, a lawful Terry frisk must be preceded by [1] aTerry stop supported by reasonable suspicion and [2] reasonable suspicion that the suspect is armed or poses a threat to the police officer.") However, "the officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger."Terry, supra at 27. A Terry stop, moreover, is justified solely by "the protection of the police officer or others nearby, and it must therefore be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments." Id. at 29.
 {¶ 10} In deciding whether reasonable suspicion exists, courts must examine the "`totality of the circumstances' of each case to determine whether the detaining officer has a `particularized and objective basis' for suspecting legal wrongdoing." State v. Bobo (1988), 37 Ohio St.3d 177,524 N.E.2d 489, at syllabus, paragraph one, citing, State v.Freeman (1980), 64 Ohio St.2d 291, 414 N.E.2d 1044. Under this totality of the circumstances approach, police officers are permitted to "draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that `might well elude an untrained person.'" United States v. Arvizu (2002),534 U.S. 266, 151 L. Ed.2d 740, 122 S. Ct. 744, quoting, United States v.Cortez (1981), 449 U.S. 411, 418, 66 L. Ed. 2d 621,101 S. Ct. 690. Thus, a court reviewing the officer's reasonable suspicion determination must give due weight to the officer's training and experience and view the evidence through the eyes of those in law enforcement. Id. See, also, State v. Scott, Cuyahoga App. Nos. 82642 and 82643, 2003-Ohio-6343.
 {¶ 11} Vaughters argues that the police had no reason to detain him once he told them his age. Contrary to Vaughter's assertions, we find that, based on the totality of the circumstances, the officers had a reasonable suspicion of criminal activity and, moreover, that a protective search was warranted.
 {¶ 12} The record reflects that Officer Harris possessed specific and articulable facts to warrant an investigatory stop. First, it appeared to the officer that Vaughters and Ferguson were underage and thus, violating local curfew laws. This evoked reasonable suspicion of possible criminal activity at 3:15 a.m. See Strickland v. Tower City Mgmt. Corp. (Dec. 24, 1997), Cuyahoga App. No. 71839; Richmond Heights v. Marando (May 28, 1992), Cuyahoga App. No. 60471. Moreover, stopping a "youthful-looking" adult does not unconstitutionally interfere with the individual's right to freedom of movement. City ofAkron v. Fair (1994), 68 Ohio Misc. 2d 40, 646 N.E.2d 1205. Therefore, even though Vaughters was not a minor, the officers were still within constitutional bounds to stop him and verify his age. Officer Harris also testified that juveniles often lie about their age, so he routinely verifies a person's age and identity.
 {¶ 13} We also find that the pat-down for weapons was reasonable. Officer Harris was patrolling a high crime area in the middle of the night.[2] He had specific orders to target minors violating curfew. He approached Vaughters and Ferguson because they appeared to be curfew violators. For officer safety, he asked Vaughters to remove his hands from his coat pockets. Harris immediately observed that something heavy remained in Vaughters' coat pocket. Harris further testified that he did not even recall checking the identification Vaughters produced because he was focused exclusively on the heavy object in his pocket. Moreover, once Harris patted Vaughters' pocket, he immediately felt the barrel of a gun.
 {¶ 14} Because Officer Harris conducted a lawful Terry
stop, we find that the trial court properly overruled the motion to suppress. Therefore, we overrule the sole assignment of error.
Judgment affirmed.
It is ordered that appellee recover of appellant the costs herein taxed.
The court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Gallagher, J. and Rocco, J. Concur.
[1] Vaughters' notice of appeal specified that he was appealing the final judgment entered on June 15, 2005, not the denial of the motion to suppress rendered on June 9, 2005. App.R. 3(D) requires an appellant to specify the order being appealed. However, we will review the sole assignment of error because App.R. 3(F) allows for the amendment of the notice of appeal.
[2] An area known for drug or criminal activity is a relevant circumstance to consider for purposes of conducting a Terry
stop and frisk. See, State v. Bostick, Cuyahoga App. No. 81900, 2003-Ohio-3252.